KARL S. HALL
Reno City Attorney
MARK A. HUGHS
Deputy City Attorney
Nevada State Bar No. 5375
Post Office Box 1900
Reno, Nevada 89505
(775) 334-2050
*Attorneys for Jeffrey Butler, Patrick McCauley,*
*Shelby Crawford and the City of Reno*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* ◊ \* \*

| | |
|---|---|
| MOHAMMADALI AFSHAR, | **CASE NO.: 3:24-cv-00110-MMD-CLB** |
| Plaintiff, | **MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JEFFREY BUTLER, PATRICK MCCAULEY, SHELBY CRAWFORD, THE CITY OF RENO, a political subdivision of the State of Nevada, and DOES 1-X, inclusive, | **EXHIBITS FILED UNDER SEAL UNDER COURT ORDER ECF. NO. 18 (Exhibits 4-7)** |
| Defendants. / | |

Defendants City of Reno, Jeffrey Butler, Shelby Crawford, and Patrick McCauley ("Defendants"), by and through their attorneys, Reno City Attorney Karl S. Hall and Deputy City Attorney Mark Hughs, move for summary judgment in their favor on all of the Plaintiff's claims, and the application of qualified immunity in their favor on Plaintiff's claim of Fourth Amendment excessive force. This Motion is based on Fed. R. Civ. P. 56, the attached Memorandum of Points and Authorities, the record before the Court and any additional arguments or submissions the Court deems just and proper.

///

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

-1-

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The premise of Plaintiff's lawsuit, that he did not commit any offense which caused him to be handcuffed, or cause his own injury through his physical resistance, is contradicted by his recorded interactions with Reno Police and his conviction for obstructing and resisting an officer. Moreover, his excessive force claim is *Heck*-barred[1], as it would conflict with his criminal conviction. Based on the undisputed facts and circumstances, Plaintiff's pendant state claims are also flawed. Those undisputed facts, when applied to the applicable law, clearly show Defendants' actions were objectively reasonable and they are entitled to qualified immunity and summary judgment.

**STATEMENT OF UNDISPUTED FACTS**

At approximately 1:30 a.m. on the morning of March 16, 2022, Defendants Butler, Crawford and McCaulley, who were working as patrol officers with the Reno Police Department, responded to a report of hit and run near Villa Verde Drive and Escalera Way in Reno. (ECF #1, ¶ 9; Butler Incident Report, EXHIBIT 1, p.1; Crawford Incident Report, EXHIBIT 2, p.3[2]; McCauley Incident Report, EXHIBIT 3, p.1).[3] Crawford was a new officer being trained by Officer McCauley. (ECF #1, ¶6). As they approached the area, they activated their body worn cameras.[4] (ECF #1, ¶10; Butler Video, EXHIBIT 4; Crawford Video, EXHIBIT 5; McCauley Video, EXHIBIT 6). Upon arrival they found a Subaru Outback that had been parked at the curb with severe rear end damage; it had been struck and forced forward onto the sidewalk and into the driveway of another residence, where it struck a Toyota 4Runner. (ECF #1, ¶11; Ex. 2, p.3; Ex. 3, p.1; Ex. 4 at 1:40:27; Exs. 5 and 6 at 1:52:35 – all time references to videos in this Motion are to the time-stamp shown in the top right corner of the videos). The Subaru and Toyota had both

---

[1] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[2] Certain exhibits, including Exhibit 2, have confidential and/or certain personal information redacted, which information is irrelevant to this matter.

[3] As many of the undisputed facts stated herein are recorded in multiple exhibits, including the Complaint (ECF #1), three police reports and several body worn camera videos, representative samples of the exhibits, rather than every exhibit which contains the information referenced, may be cited.

[4] While parts of this Motion reference specific moments of videos, for context watching the preceding 10 seconds or so is recommended.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

been parked and unoccupied. (Ex. 2, p.3). A trail of leaked vehicle fluid led away from the accident area, which trail Crawford and McCauley followed to a nearby apartment complex where they found an unoccupied white 2003 Lexus with severe front end damage, a cracked windshield and its hood bent upwards into the driver's line of sight and both front airbags deployed. (ECF #1, ¶12; Ex. 4 starting at 1:57:27, best view starts at 1:59:30). Officers Butler and Meadows[5] stayed with the unoccupied Lexus. (Ex. 1, p.2).

At approximately 2:15 a.m. the Plaintiff approached Butler and Meadows, acknowledging the vehicle was his, he had been driving it and he struck the Subaru; When Plaintiff learned he would be cited for the accident he became agitated and argumentative. (Ex. 1, p.2; Butler Video No. 2[6], EXHIBIT 7 starting at 2:15:31). Butler observed Plaintiff showed signs of intoxication, including the odor of an alcoholic beverage on his breath, slurred speech, and red watery eyes. (Ex. 1, p.2). Butler informed Crawford and McCauley that the Plaintiff had appeared at his vehicle and was becoming uncooperative.[7] (Ex. 3, p.1). When Crawford and McCauley arrived back at the apartments, they also observed Plaintiff showed signs of intoxication, and Plaintiff acknowledged to Crawford that he had consumed alcohol that evening. (Ex. 2, p.3; Ex. 3, pp.1-2). In addition to her communications with the other officers regarding what they learned in the investigation[8], Crawford asked the Plaintiff what happened. (Exhibit 5, starting at 3:03:28). Through RPD's efforts, it was determined Plaintiff did not attempt to locate the owner of the Toyota he damaged, nor provide his name and address to that person as required by law.[9] (Ex. 2, p.3).[10]

---

[5] Officer Meadows was not present through the entire encounter with Plaintiff and is not a defendant.

[6] As Plaintiff approached Butler unexpectedly, Butler's camera was off but was turned on again for his encounter with Plaintiff.

[7] The officers all had radios and communicated with each other during the investigation. (See Exs. 4, 5, 6 and 7).

[8] Such communications are reflected throughout Exhibits 4, 5, 6 and 7.

[9] Nev. Revised Stat. 484E.040(1) provides, "the driver of any vehicle which is involved in a crash with any vehicle or other property which is unattended, resulting in any damage to such other vehicle or property, shall immediately stop and shall then and there locate and notify the operator or owner of such vehicle or other property of the name and address of the driver and owner of the vehicle striking the unattended vehicle."

[10] It should be noted Plaintiff provided incorrect information to the Subaru Owner, as his electronic insurance "card" did not show his correct address. (Ex. 6 at 1:57:27, McCauley recites correct address; EXHIBIT 8, Plaintiff's insurance "card" shown to Subaru owner).

At approximately 3:21 a.m. Crawford and McCauley approached Plaintiff to issue a citation. (ECF #1; Ex.5 starting at 3:21:09). Upon being informed he was being cited Plaintiff moved toward Crawford, and she had to ask him to step back. (Ex.5 starting at 3:21:34). When Crawford answered Plaintiff's question as to what he would be cited for, Plaintiff started arguing with Crawford. (Ex.5 starting at 3:21:52). Plaintiff then claimed that Crawford did not speak to him as part of her investigation (Ex. 5 at 3:22:21), apparently unable to remember that he had spoken to her less than 20 minutes earlier (Ex.5 starting at 3:03:28; Ex. 2, bottom of p.3). He then argued with Butler and McCauley, who stood on either side of him. (Exs. 5 and 6 starting at 3:22:29).

While Crawford was standing in front of Plaintiff, she accidentally dropped Plaintiff's driver's license, and he immediately demanded that she pick it up. (Ex.6 starting at 3:22:44). After speaking with Plaintiff about appearing in court, Crawford instructed Plaintiff, "go ahead and back up and I will pick up your license for you."[11] (Ex.6 starting at 3:23:45). Plaintiff refused to do so and argued with the officers some more. *Id*. Plaintiff continued to argue before defiantly taking one very small step backward. (Ex.6 starting at 3:24:00). As Plaintiff had not backed up sufficiently for safety purposes[12], McCauley instructed him to back up more. *Id*. Plaintiff again refused, arguing with the officers, until McCauley then announced "O and R" (obstructing and resisting), and McCauley and Butler approached Plaintiff to handcuff him. (Ex.6 starting at 3:24:09). Plaintiff physically struggled with and resisted the officers to such a degree both Butler's and McCauley's body worn cameras were knocked off their uniforms. (Exs.6 and 7 at 3:24:15). Fortunately, Officer Crawford's camera was also recording. (Ex.5 starting at 3:24:14). Crawford's recording shows that, rather than physically relinquishing to the officers, Plaintiff continued to physically resist them. (Ex.5 starting at 3:24:14). At 3:24:15 in Crawford's video, Plaintiff's right arm can be seen pulling away from McCauley and coming forward.[13] (Ex.5 at 3:24:16). McCauley

---

[11] As discussed below, Crawford asked Plaintiff to back for safety reasons, as Plaintiff was close to her and could kick or otherwise harm her while she picked up the license.

[12] See footnote 11.

[13] The playback speed of the video can be changed (slower or faster) by clicking on the three dots on the bottom right corner of the video, clicking on "Speed" and choosing a desired playback speed.

was able to retrieve Plaintiff's arm, and as Plaintiff struggled he exclaimed in pain. (Ex.5 starting at 3:24:24). During the struggle the arm Plaintiff had pulled away was injured.[14] (ECF #1, ¶34). Medical assistance was summoned, and Plaintiff was treated at Renown Medical Center. (ECF #1, ¶36). The injury resulting from Plaintiff's resistance is the basis of his lawsuit. (ECF #1).

Plaintiff was issued a new citation which included a charge for his obstructing and resisting the officers (EXHIBIT 9, Citation), a violation of Reno Municipal Code (RMC) section 8.06.010 (EXHIBIT 10, RMC 8.06.010).

In a deal with the prosecutor, Plaintiff ultimately pled *nolo contendre* to - and was convicted of: [1] Obstructing and Resisting Officer, Physical; and [2] Failure to Maintain Lane/Improper Lane Change. (EXHIBIT 11, Reno Municipal Court Docket; EXHIBIT 12, Email correspondence between prosecutor and Plaintiff's attorney). With regard to obstructing and resisting, Plaintiff specifically pled to the definition of "obstructing" found in section (a)(1) of RMC 8.06.010 (Ex. 10), which definition is "physically impeding or delaying a peace officer during the conduct of the officer's official duties." *Id.* (see Ex. 12, bottom of p.1); ECF # 1, ¶39.

In discovery the individual parties were deposed. Plaintiff acknowledged that at the time of this incident, he weighed around 230 or 240 pounds. (EXHIBIT 13, Excerpts of Plaintiff's deposition, p.17:17-19).[15] He also acknowledged he does not claim Butler or Crawford broke his arm. *Id.*, at p.128:24-p.129:2. McCauley testified there was an officer safety concern about Plaintiff's proximity to Crawford with regard to picking up the driver's license, and given Plaintiff's contentious actions, announcing that he would be handcuffed would only compound those concerns. (EXHIBIT 15, Excerpts of McCauley deposition, p.118:15-p.121:20). McCauley also described his attempt to handcuff Plaintiff, Plaintiff's resistance and his attempt to utilize a standard wrist lock. *Id.*, at p.122:3-p.127:21. He further describes Plaintiff's active attempt to pull away from the wrist lock. *Id.*, at P.130:9-18.

Despite the undisputed evidence of Plaintiff's resistance and aggression, and his conviction for such conduct, his Complaint alleges he did not engage in such behaviors and focuses on his

---

[14] It is unknown to what extent Plaintiff's arm was injured in the earlier accident.
[15] The video recording of Plaintiff's deposition is included as EXHIBIT 14.

own concerns to the exclusion of all other circumstances faced by the officers.  (ECF #1).

**LAW**

### 1. Standard.

Defendants seek summary judgment under Fed. R. Civ. P. 56.  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party asserting a fact is undisputed must support the assertion by citing materials in the record, or show that the adverse party cannot demonstrate the presence of a genuine dispute.    Fed. R. Civ. P. 56(c)(1)(A)and (B).

The moving party bears the burden of demonstrating the basis of its motion, and the absence of any genuine issue of material facts.  *Celotex Corp. Catrett*, 477 U.S. 317, 323 (1986).  Upon such a showing, to rebut a motion for summary judgment the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v. Jefferson School District No. 14J*, 208 F.3d 736 (9th Cir. 2000).  Only a fact that might affect the outcome of the suit under governing law is a "material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to establish a genuine dispute.  *Id.* at 252.  The evidence must be such that a jury could reasonably find for the non-moving party.  *Id*.

Under a Rule 56 inquiry, a failure of proof as to an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex*, supra, at 322-323.

### 2. Qualified Immunity.

To make out a cause of action under 42 U.S.C §1983, a plaintiff must show that (1) the defendant acted under color of state law and (2) deprived plaintiff of rights secured by the Constitution or federal statutes."  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  A public official is immune from suit under 42 U.S.C. §1983 unless the official has violated a clearly established federal statutory or constitutional right.  *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014).  Such immunity is qualified immunity.  The importance of qualified immunity, not just to individual government defendants, but "to society as a whole", is recognized by the Supreme

Court. *City and County of San Francisco v. Sheehan*, 575 U.S. 600, n.3 (2015) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Qualified immunity is an immunity from suit, and "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001)(receded from in *Pearson v. Callahan*, 555 U.S. 223 (2009) on grounds not relevant to this argument). Unlike a standard motion for summary judgment, a motion based on a claim for qualified immunity places the burden on the plaintiff to show "both a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Green v. Post*, 574 F.3d 1294, 1300 (10ᵗʰ Cir. 2009).

## ARGUMENT

Plaintiff is suing certain Defendants for the use of excessive force and associated state claims. Each of the Defendants is entitled to summary judgment and/or qualified immunity.

### 1. Defendants Butler and McCauley are Entitled to Summary Judgment/Qualified Immunity in Plaintiff's Excessive Force Claim.

Plaintiff's First Claim for Relief against Butler and McCauley is subject to the application of qualified immunity. Moreover, summary judgment is proper as the claim is contradicted by Plaintiff's criminal conviction, and therefore cannot stand.

### a. Butler and McCauley are Entitled to Qualified Immunity.

A claim that excessive force was used in the course of an arrest is governed by the *Fourth Amendment. Graham v. Connor*, 490 U.S. 386, 388 (1989). Not every use of force violates the *Fourth Amendment*. *Id.,* at 396. The *Graham* Court noted that whether the force used in an arrest is reasonable requires a "balancing of the nature and quality of the intrusion on the individual's *Fourth Amendment* interests" against the government's interests based on the totality of circumstances.[16] *Graham* at 396 (internal quotation marks omitted). "The question is whether the

---

[16] Under the *Fourth Amendment*, "officers 'are not required to use the least intrusive degree of force possible.'" *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017) (en banc) (citation omitted). Rather, the force used must "be justified by the need for the specific level of force employed." *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (citation omitted). "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194 (2001). In this matter Plaintiff was actively

officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*, at 397. Determining whether a *Fourth Amendment* violation occurred requires the application of such an "objective reasonableness" test which addresses: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest. *Id.* Moreover, the reasonableness of the force used is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hayes v. County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013). Determinations regarding the use of force must allow for the fact that police officers often must make split-second judgments, in circumstances that are tense, uncertain and rapidly evolving. *Id.* The arrest of Plaintiff was such a situation.

Plaintiff alleges that Butler and McCauley used excessive force in handcuffing him. It is important to note they were justified in handcuffing him not only for officer safety (as Plaintiff was in a position where he could have harmed Officer Crawford as she tried to retrieve his driver's license on the ground), but also for obstructing and resisting, for which he was convicted. Nev. Revised Stats. 171.124(1)(a) and 171.136(2)(b) (arrest may be made when offense is committed in the presence of the officer).

Under the totality of circumstances Butler and McCauley's actions were certainly objectively reasonable. This is apparent when the *Graham* factors are applied:

A. **Severity of the Crime:** Plaintiff was obstructing the officers in the conduct of their official duties, after admittedly slamming into a car, driving from the accident scene in an unsafe vehicle and displaying an incredible and continuous level of belligerence and aggressiveness;

B. **Whether there is an immediate threat to the safety of the officers or others:** The totality of circumstances known to the Officers demonstrated Plaintiff was reckless and aggressive, which behavior continued in their presence. For instance, he:

---

resisting arrest by struggling with the officers to such a degree that both officer's body worn cameras, which are made to survive typical law enforcement encounters, were knocked off the officers.

- Slammed his car into a parked car hard enough to propel it onto the sidewalk and into another vehicle;

- Failed to provide information to the owner of the Toyota 4Runner as required by law;

- Drove his badly damaged car (with the hood bent up into the line of sight and front airbags deployed) dangerously on a public street;

- Weighed approximately 230 to 240 pounds and was agitated and argumentative;

- Showed objective signs of intoxication and admitted consuming alcohol;

- Was not thinking rationally or realistically, accusing Crawford of not discussing the accident with him (Ex. 5 at 3:22:23) despite her having done so less than 20 minutes previously (Exhibit 5, starting at 3:03:28);

- Encroached on Crawford's physical space when she approached him to issue his citation;

- Continuously argued with all the officers;

- Demanded Crawford pick up his driver's license when she accidentally dropped it;

- Refused orders to back up in response to the officers' concerns over maintaining a safe space between him and Crawford, only eventually and belligerently taking one very small step as if to demonstrate his defiance; and

- Demonstrated continued resistance when the officers tried to handcuff him, physically struggling so much that the officer's cameras were knocked to the ground while Plaintiff fought against being handcuffed.

In sum, Plaintiff was dangerously belligerent and aggressive, including physically, was unpredictable, and clearly had no regard for the damage he caused or the wellbeing of anyone other than himself.

C. **Whether he is actively resisting or evading arrest:**  Plaintiff was clearly resisting

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

arrest, fighting against the officer's handcuffing him and ultimately being convicted of obstructing and resisting. He did not stop struggling against the officers until his struggles resulted in an injury.

Given the undisputed circumstances described above, Butler and McCauley's actions were clearly objectively reasonable. Under such circumstances, their actions did not violate the *Fourth Amendment*. *Graham* at 396 (Not every use of force violates the *Fourth Amendment*). Whether the force used in an arrest is reasonable requires a "balancing of the nature and quality of the intrusion on the individual's *Fourth Amendment* interests" against the government's interests.[17] *Id*. Thus Butler and McCauley are clearly entitled to summary judgment and qualified immunity.

### b. Plaintiff's §1983 Claim is *Heck*-barred.

A §1983 claim that would necessarily imply the claimant's criminal conviction is invalid must be dismissed unless the claimant can prove the criminal conviction has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). In other words, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

Plaintiff's lawsuit is premised on claims that he did not resist arrest (ECF #1, §43), physically block the officers or engage in any provocative conduct (ECF #1, ¶45) or commit "any offense against the law that would justify the use of force exercised by Defendants McCauley and Butler" (ECF #1, ¶57). Yet, his conviction for obstructing and resisting is premised on his plea to the definition of "obstructing" found in section (a)(1) of RMC 8.06.010, which is "*physically impeding or delaying* a peace officer during the conduct of the officer's official duties" (emphasis added). As noted, Butler and McCauley were justified in arresting Plaintiff for such violation, and it was Plaintiff's physically impeding them – part of his continuing obstruction that morning - that

---

[17] See also, footnote 16.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

led to his injury.  Since Plaintiff's §1983 claim arises out of the same facts at issue in his conviction, he cannot pursue his §1983 claim.[18]  *Heck*, supra.

### 2.  The Undisputed Facts Negate Plaintiff's Battery Claim.

Plaintiff's Second Cause of Action alleges battery against Butler, McCauley and, apparently through vicarious liability, against the City of Reno.[19]  "To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur."[20]  *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001).  With regard to police officers, their role must be considered.  *Williams v. City of Sparks*, 112 F.4th 635, 646–47 (9th Cir. 2024).  As the Ninth Circuit noted in *Williams*,

> "Under Nevada law, police officers 'are privileged to use that amount of force which reasonably appears necessary,' and are liable only to the extent they use more force than reasonably necessary." *Tuuamalemalo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (quoting *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996)). "The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard:

---

[18] Plaintiff's claims appear to implicate the doctrine of issue preclusion as well.  Under the doctrine, which is sometimes referred to as collateral estoppel, claim preclusion or *res judicata*, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S. Ct. 645, 649 (1979)). The core principle behind this well-established concept is that a "right, question or fact distinctly put in issue and directly determined by a court…. cannot be disputed in a subsequent suit between the same parties or their privies…" *Montana*, 440 U.S. at 153 (quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).

The full faith and credit statute affords judicial proceedings the same full faith and credit in every court in the United States as they have in their forum state. 28 U.S.C. § 1738.  This statute has "long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'" *San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 336, 125 S. Ct. 2491, 2500, (2005); (citing *Allen v. McCurry*, 449 U.S. 90, 94-96, 101 S. Ct. 411 (1980)).  Accordingly, federal courts are required to give the same preclusive effect to a state court judgment as would a court of the state in which it was rendered. *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81 104 S. Ct. 892, 896 (1984).  Allowing Plaintiff's §1983 claim to progress would violate the fundamental principles of issue preclusion and full faith and credit.

[19] Plaintiff's Complaint only seeks judgment against Butler and McCauley on the battery claim (ECF #1, p.9:19-20), and the Complaint does not explicitly allege any theory of liability against the City for the claim. Given Plaintiff's reference to the course and scope of Butler's and McCauley's employment (ECF #1, ¶70) Defendants will address the lack of City vicarious liability.  However, if Plaintiff argues some other theory of liability against the City on the battery claim, Defendants respectfully request an opportunity to address that theory.

[20] Some courts add an "unlawful" or "non-privileged" element to battery claims based on criminal or California law.  However, even if such an element is included, as discussed with regard to the excessive force claim, Butler and McCauley were authorized to go "hands on" with Plaintiff for officer safety and arrest purposes.  Nev. Revised Stats. 171.124(1)(a) and 171.136(2)(b).

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

> Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances." *Ramirez*, 925 F. Supp. at 691.

Williams v. City of Sparks, 112 F.4th 635, 646–47 (9th Cir. 2024).

It should be noted that, contrary to the allegations of his Complaint (See ECF #1, ¶67), Plaintiff acknowledged Butler did not break his arm. Ex. 13, at p.128:24-p.129:2. Thus, the battery claim should not be alleged against Butler. In any event, as discussed above, Butler and McCauley's use of force was reasonably objective under *Graham*. Thus, they are not liable for battery, and it follows that the City of Reno bears no liability under a vicarious liability theory. *Celotex*, supra, at 322-323 (a failure of proof as to an essential element of the nonmoving party's case necessarily renders all other facts immaterial).

**3. Plaintiff's Negligence Claim is Not Supported by the Facts or Law.**

Plaintiff's Third Cause of Action is for negligence, which he ostensibly brings against all the Defendants.[21] "[T]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.,* 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009).

Plaintiff's allegation regarding the duty of care focuses only on the officers' duty to the public and Plaintiff (ECF #73), but he ignores the officers' duty to safeguard themselves and each other from Plaintiff's belligerent and aggressive behavior. Plaintiff also neglects to address the consequences to himself from his behavior, and his "physically impeding or delaying a peace officer during the conduct of the officer's official duties" (RMC 8.06.010(a)(1)) to which he specifically pled and was convicted. Instead he alleges, in paragraph 74 of the Complaint (ECF #1), that the officer's breached a duty of care by,

> . . . failing to properly and adequately access [sic] the **need to formally arrest** Plaintiff; by failing to properly and adequately access [sic] the **need for the use of force**; by failing to properly and adequately follow **standard**

---

[21] As with Plaintiff's battery claim, the Complaint does not explicitly allege any theory of liability against the City for the negligence claim. Given Plaintiff's reference to the course and scope of the officer's employment (ECF #1, ¶75) Defendants will address the lack of City vicarious liability. However, if Plaintiff argues some other theory of liability against the City on the negligence claim, Defendants respectfully request an opportunity to address that theory.

**police principles and practices**, including proper principles of contact and cover, principles of proper command and control, use of de-escalation tactics, use of disrespectful and unsafe tactics, use of reasonable force, and acts in violation of NRS 171.123; and, by such other acts or omissions to be later determined.  (emphasis added)

The undisputed facts show that the officers did not breach their duty of care.  With regard to Plaintiff's reference to Nev. Revised Stat. 171.123 (limiting detention before arrest to 60 minutes), Plaintiff's own actions – a violation of RMC 8.06.010 *for which Plaintiff was convicted* – indisputably caused delay.  Likewise, those same actions by the Plaintiff, physically impeding and delaying the officers, which raised the specter of public and officer safety, caused the need for arrest and use of force.  The "standard" police principles alleged are subsumed within the issues raised in this paragraph.  Plaintiff cannot counter the undisputed facts with his own speculative musings.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)(The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to establish a genuine dispute).

Similarly, the indisputable video evidence shows Plaintiff's own actions in fighting against Butler and McCauley led directly to his injury.

When a plaintiff cannot prove any one of the elements of a claim, the claim must fail.  C*elotex*, supra, at 322-323 (a failure of proof as to an essential element of the nonmoving party's case necessarily renders all other facts immaterial).  Here, the facts do not support the elements of negligence necessary for Plaintiff to prove his claim, and summary judgment is warranted.  Thus, there can also be no vicarious liability on the part of the City.

///

///

///

///

///

///

///

**Reno City Attorney**
**P.O. Box 1900**
**Reno, NV 89505**

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find qualified immunity applies to Plaintiff's excessive force claim, and that summary judgment be granted in favor of Defendants on all Plaintiff's claims.

DATED this ___30th___ day of June, 2025.

KARL S. HALL
Reno City Attorney


By:___/s/ Mark A. Hughs_____
      MARK A. HUGHS
      Deputy City Attorney
      Nevada State Bar #5375
      Post Office Box 1900
      Reno, Nevada 89505
      *Attorneys for Jeffrey Butler, Patrick McCauley, Shelby Crawford, and the City of Reno*

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

-14-

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the RENO CITY ATTORNEY'S OFFICE, and that on this date, I am serving the foregoing document(s) on the party(s) set forth below by:

|           | Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices or; |
|-----------|---|
|           | Personal delivery. |
| X         | CMECF electronic service. |
|           | Federal Express or other overnight delivery. |
|           | Reno/Carson Messenger Service. |

addressed as follows:

Kenneth E. Lyon, III
**Law Offices of Kenneth E. Lyon, III**
333 Flint Street
Reno, NV 89501
*Attorney for Plaintiff*


DATED this __30th__ day of June, 2025.


                                          __/s/ Terri Strickland_____
                                          Terri Strickland
                                          Legal Assistant

**Reno City Attorney**
**P.O. Box 1900**
**Reno, NV 89505**

-15-

**EXHIBIT LIST**

| Exh. No. | Description | Pages |
|---|---|---|
| 1 | Butler Report | 3 |
| 2 | Crawford Supplemental Report (**Redacted**) | 5 |
| 3 | McCauley Report (**Redacted**) | 3 |
| 4 | Butler Accident Investigation (COR – 000439)<br>**FILED UNDER SEAL** | 1 |
| 5 | Crawford Axon Body 3 Video 2022-03-16 0152 X6031627D (COR - 000442)<br>**FILED UNDER SEAL** | 1 |
| 6 | McCauley Video 2022-03-16 0152 X6031246Z (COR - 000441)<br>**FILED UNDER SEAL** | 1 |
| 7 | Butler Traffic Accident Citation O and R (COR - 000446)<br>**FILED UNDER SEAL** | 1 |
| 8 | Insurance Card | 2 |
| 9 | Citation Redacted | 2 |
| 10 | RMC 8.06.010 | 2 |
| 11 | Reno Muni - Docket | 3 |
| 12 | Lyon/Drake Emails | 4 |
| 13 | Afshar Deposition Transcript Excerpts | 7 |
| 14 | Mohammadali Afshar Deposition<br>**MANUALLY FILED** | 1 |
| 15 | McCauley Deposition Transcript Excerpts | 15 |

Reno City Attorney
P.O. Box 1900
Reno, NV 89505