KARL S. HALL
Reno City Attorney
MARK A. HUGHS
Deputy City Attorney
Nevada State Bar No. 5375
Post Office Box 1900
Reno, Nevada 89505
(775) 334-2050
*Attorneys for Jeffrey Butler, Patrick McCauley,*
*Shelby Crawford and the City of Reno*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* ◊ \* \*

| | |
|---|---|
| MOHAMMADALI AFSHAR, | **CASE NO.: 3:24-cv-00110-MMD-CLB** |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JEFFREY BUTLER, PATRICK MCCAULEY, SHELBY CRAWFORD, THE CITY OF RENO, a political subdivision of the State of Nevada, and DOES 1-X, inclusive, | |
| Defendants. / | |

Defendants City of Reno, Jeffrey Butler, Shelby Crawford, and Patrick McCauley ("Defendants"), by and through their attorneys, Reno City Attorney Karl S. Hall and Deputy City Attorney Mark Hughs, reply in support of their Motion for Summary Judgment (ECF #25). This Reply is based on Fed. R. Civ. P. 56, the attached Memorandum of Points and Authorities, the record before the Court and any additional arguments or submissions the Court deems just and proper.

///

///

### MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

Plaintiff's Response[1] to the Defendants' Motion for Summary Judgment[2] attempts, through convoluted arguments and assertions, to obscure the undisputed facts and the law at issue with immaterial matters, hypothetical musings and misplaced efforts to recharacterize indisputable circumstances.

As an initial matter, it is important to note that, in his Response (ECF #29) Plaintiff dropped his civil rights claim against Defendant Butler, and thus by default, his battery claim as well.[3] Because Plaintiff has withdrawn those claims, they will not be addressed herein.  Plaintiff indicates he withdrew the claims because Butler was not an "integral participant" in the effort to handcuff Plaintiff, and there is insufficient evidence to support the claim against Butler. *Id.*, at p.11, footnote 5.  However, he fails to address how McCauley's and Butler's actions differed.  The distinction, or rather lack thereof, Plaintiff bases his claim withdrawal upon sheds light on the contrived nature of his claims, discussed below.

### A.  Plaintiff's Excessive Force Claim is Subject to Summary Judgment.

####     1.  Plaintiff's Improper and Irrelevant Arguments.

To properly address Plaintiff's excessive force claim, it is important to dispose of the misleading and irrelevant arguments with which Plaintiff populates his Response.

For instance, Plaintiff cites McCauley's deposition testimony and claims "McCauley himself acknowledges that the forward movement of Afshar's right hand in the BWC could have been a reflexive action."  (ECF #29, p.15:15-16).  Plaintiff's assertion is inappropriate, incorrect and misleading.  McCauley's actual testimony (at ECF #29-5, p.26:7-18 (emphasis added)) was:

> Q  Then did your grip on his wrist come off, and that's what we see when his arm comes forward?
> A  Yes, as **he was trying to continue to pull away** and -- yeah.
> Q  **So it's your understanding he was trying to pull away when we see his hand come out in front of him?**
> A  **Yes**.

---

[1] ECF #29, sometimes referred to as "Response."
[2] ECF #25, sometimes referred to as "MSJ."
[3] See ECF #29, p.21:1-7.

> Q   Okay.  Because before I thought you said that was probably reflex.
> A   It could have been reflex, **but the continuation of it would be the active.**

Plaintiff's mischaracterization of McCauley's testimony does not create a question of fact.  *Scott v. Harris*, 550 U.S. 372, 380 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")  It remains undisputed that McCauley did not think Plaintiff's evasive maneuvers were merely a reflex.

Plaintiff also relies upon other misleading and irrelevant arguments in his Response.  As an example, he borrows heavily from the opinions of his retained police practices expert, despite the fact that such second-guessing is improper in an excessive force analysis.  *Graham v. Connor*, 490 U.S. 386, 396 (1989)("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021)("Our task, however, is not to serve as a police oversight board or to second-guess officers' real-time decisions from the standpoint of perfect hindsight, but to ask whether the officers violated clearly established law.")  The expert's opinions are not a permissible factor to consider.

In a similar vein, Plaintiff makes other improper and irrelevant arguments.  For instance, he:

Devotes a great deal of his Response trying to portray "a pattern of animosity against Afshar."  Such a circumstance is irrelevant to an excessive force inquiry.  *Graham, supra at* 496 ("The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, **without regard to their underlying intent or motivation**.")(emphasis added); See also, ECF #29, p.12:12-14; and

References police general orders in his argument, despite that fact that general orders are

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

not laws and do not play a part in the excessive force analysis in this case.[4]

When Plaintiff's inappropriate and irrelevant assertions are stripped away, his argument essentially just pits his alleged perception of events against that of McCauley (the only Defendant against whom the excessive force claim is still asserted).  However, Plaintiff's perception of events is irrelevant.  *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019)("Only information known to the officer at the time the conduct occurred is relevant" in assessing the objective reasonableness of an officer's actions.); See also, ECF #29, p.12:19-22.

### 2. McCauley's Actions were Not Prohibited nor Unconstitutional.

Not every use of force violates the *Fourth Amendment*.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Qualified immunity applies to an official's conduct when the conduct at issue does not infringe upon clearly established constitutional or statutory rights.  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  And, of course, there is no viable civil rights claim when no civil right has been violated.  42 U.S.C. 1983.

Plaintiff indicates he brought suit based on "injuries he sustained during his arrest and handcuffing for the misdemeanor crime of obstruction."  ECF #29, p.1:25.  Under Nevada law, it is permissible for a peace officer to arrest a person who commits an offense, including a misdemeanor, in the officer's presence.  NRS 171.124 and 171.136.[5]  An arrest is "the taking of a person into custody" (NRS 171.104) and generally includes handcuffing.  These procedures are common, at least a century old, and are not unconstitutional.  If they were unconstitutional, they would not be in common use for decades without challenge.  Thus, McCauley's mere use of such procedures will not support Plaintiff's excessive force claim.  C*elotex Corp. Catrett*, 477 U.S. 317, 322-323 (1986)(Failure to prove an essential element of a Plaintiff's claim renders all other facts immaterial).

Moreover, none of the undisputed material facts support Plaintiff's claim that McCauley used more force than is constitutionally permissible.  As to Plaintiff's arguments otherwise, *it must*

---

[4] This is particularly true in this matter as there is no *Monnell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978) claim concerning policy or practice in this matter.
[5] "NRS" refers to the Nevada Revised Statutes.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

*be reiterated that what the Plaintiff perceives or thinks, or anyone other than the officers involved in Plaintiff's arrest perceived or thought, is immaterial.*[6] Thus, Plaintiff's many exhortations that he was not resisting, and his references to the opinion of his expert, are irrelevant and immaterial.[7] On the other hand McCauley's belief that Plaintiff was resisting (ECF #29-5, p.26:7-18), and Butler's same perception (ECF #29-3, p.23:20 – p.24:8), are undisputed material facts, *as is the video evidence showing Plaintiff pull his arm away from McCauley.*[8]

As to Plaintiff's other arguments regarding excessive force, they too are irrelevant. The undisputed facts, memorialized on video, show Plaintiff became combative whenever the subject of his receiving a citation was broached. It was Plaintiff's increasing belligerence and unpredictability when Crawford inadvertently dropped his driver's license, and his irrational and dangerous response to being requested to back up[9], that prompted his handcuffing.[10] While Plaintiff may argue he verbally surrendered, both officers perceived his sudden, video-recorded struggle to free his right hand – *after he claims he verbally relinquished* - as physical resistance. McCauley was justified in trying to regain Plaintiff's right arm for handcuffing. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 195 (2001)(receded from on other grounds in *Pearson v. Callahan*, 555 U.S. 223 (2009). In this instance *Plaintiff did fight back.* McCauley was certainly justified in reacting by using the force

---

[6] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396. "With respect to a claim of excessive force, the same standard of **reasonableness at the moment** applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,'[] violates the Fourth Amendment." *Id.*(emphasis added). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

[7] Only a fact that might affect the outcome of the suit under governing law is a "material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] Even if Plaintiff's arm movement was reflexive, it would still have been appropriate for McCauley to retrieve the arm.

[9] Giving advanced notice of arrest was not required nor beneficial given Plaintiff's behavior. See Section C.

[10] McCauley testified there was an officer safety concern about Plaintiff's proximity to Crawford with regard to picking up the driver's license, and given Plaintiff's contentious actions, announcing that he would be handcuffed would only compound those concerns. (ECF #25-15, p.5:15-p.8:20).

necessary to regain control of Plaintiff's arm and hand. This was the quintessential rapidly evolving situation addressed by *Graham*.

Moreover, the fact that Plaintiff was injured is not indicative of anything. There is no way to know to what extent the preceding accident, in which the front of Plaintiff's car was severely impacted and airbags deployed, contributed to the injury, or even how Plaintiff's arm was situated at the time of the accident. Any speculation otherwise is just that, inadmissible second-guessing.[11]

**3.  Withdrawal of the Claim Against Butler Reveals There is No Substance or Constitutional Component to Plaintiff's Claim Against McCauley.**

Plaintiff must ultimately demonstrate McCauley violated clearly established constitutional or statutory rights to prevail on his excessive force claim. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). While Plaintiff is to be commended for rightfully withdrawing his unsupported excessive force claim against Butler, his failure to also withdraw the claim against McCauley shows not only the arbitrary nature of the claim, but its lack of any basis under federal substantive law.

Plaintiff withdrew the claim by indicating his theory that Butler was an "integral participant" is not supported by sufficient evidence. (ECF #29, p.11, footnote 4). According to the authority cited by Plaintiff "integral participation" requires "some fundamental involvement in the conduct that allegedly caused the violation."[12]  However, throughout the litigation of this matter, Plaintiff did not distinguish the relevant actions (the arrest and handcuffing) undertaken by Butler and McCauley. For example, in his Complaint he alleged, "When Officers McCauley and Butler grabbed Plaintiff's arms they did so with such force as to fracture his right arm." (ECF #1, ¶34). That was a premise the parties litigated throughout pretrial proceedings, without any indication from the Plaintiff that he regarded Butler and McCauley differently.

The undisputed facts are that Butler and McCauley were doing the same thing, properly utilizing a rear wrist lock to try to handcuff Plaintiff. (See page 2 of ECF Nos. 25-1 and 25-3). The only difference between McCauley's and Butler's actions is that Plaintiff pulled his hand away

---

[11] The undisputed evidence is that Plaintiff had consumed alcohol, had just been through a shocking event and was confrontational with the police, conditions that are not conducive to keen attention to injury.
[12] *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, footnote 12 (9th Cir. 2007).

from McCauley, and McCauley had to re-establish his hold on the arm to complete the handcuffing process.  There is no clearly established constitutional right to be free from handcuffing if you escape an officer's grasp, nor is there any automatic presumption that any injury arising from struggling against an officer is the result of excessive force.  And if Plaintiff's assertion is that McCauley should have waited to see what Plaintiff might do next, that flies in the face of *Graham*'s recognition that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, supra at 396–97.

If any one of the above hypotheticals are the supposed constitutional "guidance" upon which Plaintiff's claim is premised, it would create an unworkable precedent.  There would be no clearly established law to inform officers making arrests.  In quickly evolving dynamic situations, officers would be hard pressed to implement the unfathomable teachings of "the *Afshar* principle."  Plaintiff's decision to continue suing McCauley for excessive force is based on musings which may not form the basis for defeating summary judgment.

### 4. The *Heck*-bar Applies to Plaintiff's §1983 Claim.

Plaintiff was convicted of "obstructing and resisting officer, **physical.**"  (ECF #25-11, p.2, emphasis added).  When Crawford approached Plaintiff in the parking lot to issue him his citation, the citation did not include such a charge.  (ECF #25-5 at 3:21:53).  It was only after Plaintiff refused to obey commands and struggled with McCauley and Butler as they tried to handcuff him, which was a single event, that the charge was added.  While the prosecutor noted "your client was extremely difficult and uncooperative w/ the police" she never distinguished between the handcuffing and the moments before, nor did she describe them as two events.  (ECF #25-12, p.3).  In fact, she referenced the use of force in her email discussing the event.  *Id*.  Plaintiff's counsel did not distinguish the matter either, but instead specifically referenced RMC 8.06.010(a)(1), which defines "obstructing" as "physically impeding or delaying a peace officer" in its duties.  (ECF #25-10, p.2).  Physically impeding the officers was exactly what Plaintiff did when he tried to avoid being handcuffed by McCauley.  The Municipal Court could not ignore Plaintiff's actions.

Its decision to convict necessarily took into account the totality of circumstances at issue in Plaintiff's encounter with the police.  As Plaintiff's §1983 claim necessarily implies his conviction is invalid, it must be dismissed.  *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994).

### B.  Plaintiff's Battery Claim Fails Under the Applicable Standard.

The parties agree the applicable standard for battery in this case is the same standard applied to an excessive force analysis.[13]  Because the undisputed evidence demonstrates McCauley's use of force was objectively reasonable, Plaintiff's battery claims against McCauley, and through vicarious liability, the City of Reno, are subject to summary judgment.  As Plaintiff has conceded the excessive force claim cannot be asserted against Butler, and Plaintiff withdrew that claim, by default the battery claim against Butler is withdrawn.  Therefore, Butler is entitled to summary judgment on the battery claim.

### C.  For His Negligence Claim Plaintiff Urges Improper Second-Guessing in Contravention of State Law and the  Summary Judgment Standard.

In responding to the Defendant's argument regarding the negligence claim, Plaintiff asserts the Court should explore his concept of negligence based on NRS 171.1455(1)[14] and "standards" espoused by his expert witness.  In doing so, Plaintiff ignores the role an officer's discretion plays in each unique encounter.  Discretionary acts are subject to immunity under state law.  NRS 41.032.

In Nevada "[a]ny claim against the State, its agencies, or employees resulting from some official act can only be maintained in the absence of protective governmental immunity." *Hagblom v. State Dir. of Motor Vehicles*, 93 Nev. 599, 602, 571 P.2d 1172, 1174 (1977).  NRS 41.032 is Nevada's discretionary-act immunity statute.  It states (emphasis added):

> Except as provided in NRS 278.0233[[15]] **no action may be brought** under NRS 41.031 or **against** an immune contractor or **an officer or employee of the State or any of its agencies or political subdivisions which is:**

---

[13] Because this is a state claim, the issue of McCauley's immunity under NRS 41.032 would also apply. See Section 3 of this Reply.

[14] Some of Plaintiff's references to citations are not quite clear.  For instance, he refers to NRS 171.1455(b)(1) and (2).  (See ECF #29, p.21:17-20).  Defendants understand Plaintiff to be referring to sections of NRS 171.1455(1)(b)(1) and (2).  However, if that understanding is incorrect, Defendants respectfully reserve the right to address the statute to which Plaintiff may indicate he was actually referring.

[15] NRS Chapter 278 concerns land use planning and zoning.

1.    Based upon an act or omission of an officer, employee or immune contractor, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, if the statute or regulation has not been declared invalid by a court of competent jurisdiction; or

2.    **Based upon the exercise or performance or the failure to exercise or perform a discretionary function** or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Discretionary-act immunity provides an exception to the general waiver of sovereign immunity under NRS 41.031 by applying such immunity to public entities and their employees who perform discretionary acts. *Glover-Armont v. Cargile*, 134 Nev. 361, 366, 426 P.3d 45, 51 (Nev. App. 2018). **The purpose of discretionary-act immunity, such as NRS 41.032, is to prevent second-guessing of legislative and administrative decisions grounded in social, economic, and political policy**. *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F. Supp. 3d 999, 1012 (U.S. D. Ct. Nev. 2014), *rev'd and remanded on unrelated grounds*, 670 F. App'x 617 (9th Cir. 2016). NRS 41.032 applies to municipal entities. *Travelers Hotel, Ltd. v. City of Reno*, 103 Nev. 343, 346, 741 P.2d 1353, 1354 (1987)(City of Reno was entitled to immunity under NRS 41.032).

"Discretionary acts are those which require the exercise of personal deliberation, decision and judgment." *Id*., at 103 Nev. 345-346, 741 P.2d 1354. Under Nevada law, a public officer's decision is entitled to discretionary immunity if it (1) involves an element of individual judgment or choice and (2) is based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 123 Nev. 433, 446–47, 168 P.3d 720, 729 (2007). "[D]ecisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id*. Where a government employee is free to make discretionary decisions, the test for the discretionary-function exception to the waiver of sovereign immunity requires the court to examine the nature of the actions taken and whether they are susceptible to policy analysis, regardless of the employee's subject intent when he or she acted. *Id*. "Thus, the court need not determine that a

government employee made a conscious decision regarding policy considerations in order to satisfy the test's second criterion." *Id*.

NRS 171.1455, cited by Plaintiff, is entitled "Use of deadly force to effect arrest: Limitations." Deadly force is not at issue in this case, so the statute is not directly relevant to this matter.[16] However, as Plaintiff contends it must be considered, it can be used to illustrate the discretionary nature of the Defendants' actions in compliance with the social and policy concerns of the legislature. NRS 171.1455(1) provides (emphasis added):

1. A peace officer shall use de-escalation techniques and alternatives to the use of force **whenever possible or appropriate** and consistent with his or her training, including, without limitation, advisements, warnings, verbal persuasion and other tactics. If it is necessary for the peace officer to use force, the peace officer must:

(a) If it is possible to do so safely, identify himself or herself as a peace officer through verbal commands, visual identification, including, without limitation, a clearly marked uniform or vehicle, or other reasonable means; and

(b) Use only the level of force that is objectively reasonable under the circumstances to bring an incident or person under control and safely accomplish a lawful purpose. The level of force used by the officer must, to the extent feasible:

(1) Be balanced against the level of force or resistance exhibited by the person; and

(2) Be carefully controlled.

The statute's language, "whenever possible or appropriate" clearly recognizes that police encounters are unique and cannot be governed by a one-size-fits-all mandate. A police officer must use their discretion in determining what actions are appropriate in an encounter. Such discretionary decisions are immune from state tort liability, as they concern social and policy considerations. NRS 41.032.

---

[16] It is noteworthy that the officers followed the mandates in the subsections of NRS 171.1455(1).

In his deposition, Butler made clear that whether to inform a detainee they will be arrested depends on the circumstances. (EXHIBIT 1, Excerpt of Butler Deposition, original page 150:18-21). He further indicated that, in this matter, he believed warning Plaintiff he was under arrest, after he had refused verbal commands, would not be willingly accepted by the Plaintiff. *Id.*, at p:150:10-15. That conclusion, leading to the decision not to warn Plaintiff he was to be arrested and handcuffed was an immune discretionary action, based on social and policy concerns[17], as were the officers' other decisions in their encounter with Plaintiff. NRS 41.032.

The Plaintiff cites NRS 171.1455 and his expert's opinions in an effort to argue questions of fact preclude summary judgment. However, the discretionary actions Plaintiff focuses on are subject to NRS 41.032 immunity. They may not form the basis of his negligence claim. Thus, plaintiff has not demonstrated questions of fact exist. Instead, he is once again arguing for impermissible second-guessing of the officer's immune actions. Under such circumstances, all the Defendants are entitled to summary judgment in their favor.

As a side note, Plaintiff's assertion that Butler violated the "60 minute rule" (NRS 171.123) must be addressed. Plaintiff's own actions, his "impeding or **delaying** a peace officer" – for which he was convicted - caused the delay. If Plaintiff felt the rule was violated, he would have used the violation to challenge the obstructing and resisting charge. The fact that he did not, and instead chose to accept a conviction, belies the validity of Plaintiff's assertion and associated argument.

Plaintiff may not use the immune decisions of the Defendants as a basis to refute their MSJ. Thus, all the Defendants are entitled to summary judgment on Plaintiff's negligence claim.

///
///
///
///
///
///

[17] Such concerns included officer and detainee safety and compliance with local and state legislator's policies reflected in enacted law.

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find qualified immunity applies to McCauley on Plaintiff's excessive force claim, and that summary judgment be granted in favor of Defendants on all Plaintiff's claims.

DATED this __4th__ day of August, 2025.

KARL S. HALL
Reno City Attorney


By: __/s/ Mark A. Hughs__
MARK A. HUGHS
Deputy City Attorney
Nevada State Bar #5375
Post Office Box 1900
Reno, Nevada 89505
*Attorneys for Jeffrey Butler, Patrick McCauley, Shelby Crawford, and the City of Reno*

**Reno City Attorney**
**P.O. Box 1900**
**Reno, NV 89505**

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the RENO CITY ATTORNEY'S OFFICE, and that on this date, I am serving the foregoing document(s) on the party(s) set forth below by:

    _____        Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices or;

    _____        Personal delivery.

    _X_        CMECF electronic service.

    _____        Federal Express or other overnight delivery.

    _____        Reno/Carson Messenger Service.

addressed as follows:

Kenneth E. Lyon, III
**Law Offices of Kenneth E. Lyon, III**
333 Flint Street
Reno, NV 89501
*Attorney for Plaintiff*

DATED this __4th__ day of August, 2025.

                                        */s/ Terri Strickland*
                                        Terri Strickland
                                        Legal Assistant

**Reno City Attorney**
**P.O. Box 1900**
**Reno, NV 89505**

-13-

**EXHIBIT LIST**

| Exh. No. | Description | Pages |
|:---:|---|:---:|
| 1 | Excerpt of Butler Deposition | 3 |

Reno City Attorney
P.O. Box 1900
Reno, NV 89505