UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MOHAMMADALI AFSHAR,

Plaintiff,

v.

JEFFREY BUTLER, PATRICK MCCAULEY, SHELBY CRAWFORD, THE CITY OF RENO, a political subdivision of the State of Nevada, and DOES 1-X, inclusive,

Defendants.

Case No.: 3:24-cv-00110-MMD-CLB

ORDER

## I.   SUMMARY

This action arises from an incident involving alleged police officer misconduct following a traffic accident in Reno, Nevada on March 16, 2022. (ECF No. 1 at 3, 7 ("Complaint").) Plaintiff Mohammadali Afshar sued Defendants City of Reno (the "City") and Officers Patrick McCauley, Jeffrey Butler, and Shelby Crawford, bringing a Fourth Amendment excessive force claim and associated state law claims of battery and negligence. (*Id.*) Before the Court is Defendants' motion for summary judgment.[1] (ECF No. 25 ("Motion").) For the reasons discussed below, the Court will deny Defendants' Motion, as a genuine material factual dispute exists as to whether the use of force against Plaintiff was objectively reasonable under the circumstances.

///

///

///

---

[1]Plaintiff responded (ECF No. 29), and Defendants replied (ECF No. 30). Defendants filed a motion to file supplemental authority. (ECF No. 26.) The Court grants the motion to file supplemental authority (ECF No. 26). Defendants also filed a notice of errata regarding the Motion. (ECF No. 28.)

## II.     RELEVANT BACKGROUND[2]

This case arises from injuries Plaintiff Afshar alleges he sustained during his handcuffing and arrest[3] by Officers McCauley and Butler of the Reno Police Department ("RPD") on March 16, 2022 for the crime of obstruction and resistance based upon a failure to obey officer commands. (ECF No. 1.)

At approximately 1:30 a.m., Officers Butler, McCauley, and Crawford responded to a reported "hit-and-run" at 2220 Escalera Way in Reno, Nevada. (*Id.* at 3; ECF No. 25-1 at 2; ECF No. 25-2 at 4; ECF No. 25-3 at 2.) Upon arrival, they found two damaged parked vehicles—a Subaru Outback and Toyota 4Runner—in the accident area and followed a trail of vehicle fluid to a nearby apartment complex, where they discovered a damaged Lexus registered to Afshar. (ECF No. 1 at 3.)

The officers quickly located Afshar near the scene. (ECF No. 29-7 at 6.) Around 2:15 a.m., Afshar approached the officers and admitted he had been driving the Lexus and had inadvertently struck the Subaru. (ECF No. 1 at 3-4.) Afshar acknowledged that he then "left the scene to go to a friend's apartment due to an anxiety attack and to attend to injuries" incurred after providing his insurance information to the Subaru owner. (*Id.*) At approximately 3:21 a.m., Officers Crawford and McCauley approached Afshar to issue a citation for the hit-and-run. (*Id.* at 4.)

According to Defendants, when advised he would be cited, Afshar became "agitated" and "argumentative."[4]   (*See* ECF No. 25-1 at 3.) In the process, Officer

---

[2]The following facts are undisputed unless otherwise noted.

[3]In the Complaint, Afshar notes that he was "never formally arrested." (ECF No. 1 at 6.)

[4]Moreover, according to Officer Butler, Afshar displayed signs of intoxication, including the "odor of alcohol," "slurred speech," and "red, watery eyes." (ECF No. 25-1 at 3.) According to Officer Crawford, Afshar acknowledged that he had consumed alcohol that evening. (ECF No. 25-2 at 4.) In his response, Afshar disputes these representations and, in reference to the deposition testimony of Officers Crawford and McCauley, asserts that, "[B]ased on their actual interaction with Afshar [the] officers acknowledged that he was not uncooperative, agitated, or intoxicated." (ECF No. 29 at 5; ECF No. 29-4 at 15-16; ECF No. 29-5 at 12-13.)

Crawford accidentally dropped Afshar's driver's license on the ground. (ECF No. 25-6 at 3:22:44.) Officer Crawford asked Afshar to, "Go ahead and back up and I will pick up your license for you." (*Id.* at 3:22:45-47.) On the body-worn camera footage, Afshar is observed taking a step backward in compliance. (*Id.* at 3:24:04-06.) Officer McCauley then instructed Afshar to back up further.[5] (*Id.* at 3:24:00-12.) Officer McCauley then, suddenly, verbally signals, "O & R" (obstructing and resisting), and Officers McCauley and Butler are next seen restraining Afshar and pushing him toward his vehicle to handcuff him up against it. (ECF No. 25-5 at 03:24:14-18.) At this point, Officers McCauley and Butler's body-worn cameras were knocked from their uniforms, obstructing the visual recordings (ECF Nos. 25-6, 25-7); however, Officer Crawford's camera remained operational and continued recording (ECF No. 25-5 at 3:24:14).

The events that followed involve the police officers employing physical arrest tactics. Officer Butler used a "rear wrist lock technique" to handcuff Afshar. (ECF No. 29-3 at 21.) Defendants contend that, in the process, Afshar physically resisted the handcuffing and that his "right arm can be seen pulling away from McCauley and coming forward." (ECF No. 25 at 4; *see also* ECF No. 25-5 at 3:24:14-16.) Plaintiff, however, points out that the body-worn camera footage shows the opposite; specifically, it shows Afshar stating he was "sorry" and repeatedly saying "ok guys" and "come on" while being handcuffed.[6] (ECF No. 25-5 at 03:24:15-25; *see also* ECF No. 29-1 at 26.)

---

[5]According to both the body-worn camera footage and Officer Butler's deposition testimony, the Court notes that the officer commands to Plaintiff to "back up" do not appear to be in response to any physical threat. (*See* ECF No. 29-3 at 9, 11; ECF No. 25-6 at 3:24:00-12.)

[6]In his deposition testimony, Officer Butler confirmed that Afshar's verbal statements constituted "verbal submissions" to his authority. (ECF No. 29-3 at 25.) Officer McCauley offered similar testimony. (ECF No. 29-5 at 28-29.) Although Defendants concede that Afshar verbally submitted, they maintain, however, that he, nevertheless, continued to physically resist. (ECF No. 25 at 4.) In response, Afshar states that he "never resisted" and that "any movement on [his] part was reflexive to suddenly being grabbed by the officers," which "took [him] by surprise." (ECF No. 29 at 10-11; ECF No. 29-2 at 3; ECF No. 1 at 6.) Afshar further alleges in his Complaint that "his actions were either involuntary and/or responsive to the forces being asserted upon him." (ECF No. 1 at 6.)

3

During the handcuff maneuver, Afshar's arm was gripped and twisted, resulting in injury. (ECF No. 29-7 at 6; ECF No. 29-6 at 6.) In the process, Afshar repeatedly exclaimed that the officers "broke [his] hand." (ECF No. 25-5 at 03:24:24-58.) Afshar was subsequently transported to Renown Regional Medical Center. (ECF No. 1 at 6.) According to expert medical reports, Afshar sustained a fracture to his right humerus as a result of the "rotational force" applied during the restraint. (ECF No. 29-6 at 6.)

On October 17, 2022, Afshar entered a nolo contendere plea to obstructing and resisting an officer under Reno Municipal Code § 8.06.010(b)(1) along with a traffic offense (i.e., failure to maintain a lane under NRS § 484B.223(1)). (*See* ECF No. 25-11; ECF No. 29-2 at 3.)

Afshar subsequently initiated this action. The Complaint asserts a federal constitutional claim against Officers McCauley and Butler for an excessive force violation of the Fourth Amendment under 42 U.S.C. § 1983.[7] (ECF No. 1 at 7-9.) Afshar also asserts associated battery and negligence claims under Nevada law.[8] (*Id.* at 9-10.)

III.   **DISCUSSION**

Defendants seek summary judgment in their favor on all of Afshar's claims and argue that they are entitled to qualified immunity for Afshar's Fourth Amendment excessive force claim on the basis that the officer conduct in question was "objectively reasonable." (ECF No. 25 at 7, 10.) In response, Afshar argues that a genuine issue of material fact exists as to whether the force used in his handcuffing and arrest was "reasonable" under the circumstances. (ECF No. 29 at 13-14.) The Court agrees with Afshar.

---

[7]In his response to the Motion, Afshar voluntarily withdrew his excessive force claim against Officer Butler. (ECF No. 29 at 11.) Accordingly, the claim will now proceed against Officer McCauley only.

[8]Because Afshar also voluntarily withdrew his battery claim against Officer Butler (ECF No. 29 at 11), the claim will now, accordingly, proceed against Officer McCauley and the City of Reno only.

### A.   Fourth Amendment—Excessive Force Claim

The Court first addresses the Fourth Amendment excessive force claim against Officer McCauley and finds that a genuine factual dispute as to the reasonableness of force used against Afshar precludes a finding of summary judgment. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (holding that summary judgment requires the moving party to bear the burden of showing that there are no genuine issues of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (Once the moving party satisfies Rule 56's requirements, the burden then shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial.").

A claim of excessive force during an arrest is evaluated under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 388, 396-97 (1989). To determine whether the use of force by a law enforcement officer was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id.* at 397; *see also Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (holding that "reasonableness" must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and finding genuine question of material fact as to whether officer arrest of motorist constituted Fourth Amendment excessive force violation) (quoting *Graham*, 490 U.S. at 396). In this context, "reasonableness" requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

In evaluating the objective reasonableness of a particular use of force, courts consider the totality of the circumstances under the following *Graham* factors: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the officers or others; and (3) whether the plaintiff actively resisted arrest. *See*

*id.*; *see also Peck v. Montoya*, 51 F. 4th 877, 887 (9th Cir. 2022).  While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Scott v. Harris*, 550 U.S. 372, 383 (2007) (holding that courts "must still slosh [their] way through the fact[-]bound morass of 'reasonableness.'")).

The Ninth Circuit has repeatedly recognized  that excessive force cases  are seldom suited for summary judgment because they require a highly fact-intensive inquiry. *See, e.g.*, *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1109 (9th Cir. 2004) (finding summary judgment inappropriate where officer grabbed, bent, and twisted plaintiff's arm and forced him "face first down" in execution of arrest); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (finding summary judgment inappropriate where officer injured plaintiff's wrist and arm in process of handcuffing). Moreover, the Supreme Court instructs that, because the Fourth Amendment reasonableness test "is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396; *see also Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 at n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.") (internal citations omitted).

As noted, Plaintiff alleges that Officer McCauley used excessive and unreasonable force against him when he fractured Afshar's right arm during the handcuff process, even though Afshar was "not physically blocking or engaging in any other provocative conduct." (ECF No. 1 at 7-8.) In particular, Plaintiff alleges that "less intrusive means" were available and that the officer conduct in question was "intentional," "reckless," and an "unlawful exercise of [] police authority." (*Id.* at 7.) Defendants, in contrast, argue that the force used was at all times "objectively reasonable" and justified by officer safety concerns, as "Plaintiff was in a position where he could have harmed Officer Crawford as she tried to retrieve his driver's license on the ground," and by Plaintiff's obstruction and resistance. (ECF No. 25 at 8.)

If the evidence, reviewed in the light most favorable to Afshar, could support a finding of unreasonable excessive force, then Defendants are not entitled to summary judgment.[9] In applying the *Graham* criteria, the Court begins with the "most important single element" of the three factors: whether an "immediate threat" is posed to the safety of officers or others. *See Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir.1994). Here, the Court finds that there is a genuine factual dispute as to whether Afshar posed an immediate threat to anyone's physical safety. *Cf. Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (holding that Fourth Amendment permits use of deadly force to apprehend a fleeing felon where there is "probable cause to believe the suspect poses a threat of serious physical harm"). While Defendants argue that Plaintiff "physically resisted" in a "dangerously belligerent" and "aggressive" manner (ECF No. 25 at 4, 9), Afshar's verbal compliance and his step taken backward in response to officer commands—facts Defendants concede to—suggest otherwise.[10] (ECF No. 25-5 at 03:24:15-25; *see also* ECF No. 29-1 at 26.) Given these facts and considering the evidence in the light most favorable to Plaintiff, a rational jury could very well find that Afshar posed no "immediate" safety threat.

The third *Graham* factor is whether the individual actively resisted or attempted to evade arrest by flight. *See Graham*, 490 U.S. at 396. The Court similarly finds a genuine issue of material fact as to Afshar's alleged "resistance" and "evasion." Defendants provide little to no evidence to support their contention that Afshar was "clearly resisting arrest." (ECF No. 29 at 9-10.) Defendants reference the forward movement of Afshar's right hand as a threat (ECF No. 25 at 4), which Plaintiff disputes as a "reflexive" movement. (ECF No. 29 at 10-11.) Moreover, in reference to Afshar's statements that he

---

[9]In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[10]Moreover, according to expert testimony by Christopher Darcy, consultant and expert on police and security officer performance, "Afshar demonstrated no signs of being physically aggressive toward the officers." (ECF No. 29-7 at 44.)

was "sorry," Defendants concede to the fact that Afshar made "verbal submissions" to their authority. (ECF No. 29-3 at 25; ECF No. 29-5 at 28-29; *see also* ECF No. 29-1 at 26.) The Court further notes that Afshar voluntarily approached the officers after spotting their vehicles (ECF No. 1 at 3-4; ECF No. 29-1 at 20), which undermines Defendants' assertion that Afshar "evaded" arrest. (ECF No. 25 at 9-10.) In sum, there is little to no evidence to support a finding that Afshar engaged in a physical resistance of any sort against the officers, and the question of any perceived resistance, generally, is better suited for a factfinder.

Lastly, as to the first *Graham* factor—the severity of the crime at issue—a reasonable jury could find that the nature of the crime at issue (i.e., obstruction based upon a failure to obey verbal commands) provides a limited basis for the officers' use of such extreme physical force. *See Graham*, 490 U.S. at 396.

Viewing the facts in a light most favorable to Afshar and considering the totality of the circumstances under the *Graham* factors, summary judgment is improper because a reasonable juror could find that Officer McCauley used unreasonable and excessive force when he fractured Afshar's arm during the handcuff.

### B.    Qualified Immunity

Next, the Court turns to Defendants' argument that they are entitled to qualified immunity on Afshar's Fourth Amendment excessive force claim against Officer McCauley. (ECF No. 25 at 7.) Defendants contend that Afshar cannot establish a Fourth Amendment violation because the officer conduct in question was "clearly objectively reasonable" under the circumstances. (*Id.* at 10.) Afshar counters that Officer McCauley is not shielded by qualified immunity because he violated clearly established Fourth Amendment law prohibiting the use of excessive force. (ECF No. 29 at 17-18.) The Court similarly concludes that a factual dispute renders summary judgment improper as to qualified immunity.

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts

to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

Defendants have failed to meet their burden on summary judgment.[11] *Cf. Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024) (holding that, in the inmate context, the burden of proof requires showing that the right was so clearly established under the Eighth Amendment that the official knew or should have known they were violating the Constitution). Under the second prong of a qualified immunity analysis, the Court asks whether the constitutional right the official allegedly violated was "clearly established at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand" his conduct to violate the right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Rice v. Morehouse*, 989 F.3d 1112, 1123 (9th Cir. 2021); *compare Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (addressing qualified immunity in the inmate context).

It is clearly established that, under the Fourth Amendment, police officers making an arrest can use only an "objectively reasonable" amount of force in light of the circumstances facing them. *See* Bla*nkenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)). The level of force used

---

[11]"In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

is determined by the degree of any individual resistance, which is "dependent on the factual circumstances." *See Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). Here, the extent to which Afshar resisted is in factual dispute. Defendants concede to Afshar's "verbal submissions," and based on the video evidence along with Darcy's expert testimony (ECF No. 29-7), a reasonable jury could find that the level of force used disproportionately outweighed any apparent safety threat posed by Afshar. A reasonable jury could thus conclude that Officer McCauley should have understood that the amount of force deployed was excessive and a violation of clearly established Fourth Amendment law.

Under the first prong, the Court must consider whether the official violated a constitutional right. *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014). Here, the occurrence of a constitutional violation is similarly in factual dispute. That is, Defendants have failed to establish the absence of a genuine dispute of material fact as to whether they violated Afshar's Fourth Amendment rights by using injurious arrest tactics in the absence of any apparent or immediate safety threat.

Viewing all evidence in the light most favorable to Afshar, the Court, for these reasons, finds that Officer McCauley is not entitled to qualified immunity.[12]

### C.    Associated State Law Claims

### 1. Battery Claim

Defendants dispute Afshar's common law battery claim against Officer McCauley and the City of Reno for the same reason as discussed above: the use of force was "objectively reasonable." (ECF No. 25 at 11-12.) Similarly, Afshar counters that there is a genuine issue of material fact. (ECF No. 29 at 21.) The Court agrees with Afshar.

---

[12]Defendants also raise the separate argument that Afshar's excessive force claim under § 1983 is *Heck*-barred, *see Heck v. Humphrey*, 512 U.S. 477 (1994), because it conflicts with his state criminal conviction for "obstructing and resisting." (ECF No. 25 at 10-11.) Where a § 1983 action would necessarily imply the invalidity of a conviction or sentence, it may not proceed. *See Heck*, 512 U.S. at 483-87. However, here, the Court agrees that Plaintiff's criminal conviction was "separate and apart" from his excessive force claim. (*See* ECF No. 29 at 19.) Accordingly, the Court rejects Defendants' argument that Afshar's § 1983 claim is *Heck*-barred.

"Under Nevada law, police officers 'are privileged to use that amount of force which reasonably appears necessary,' and are liable only to the extent they use more force than reasonably necessary." *Tuuamalemalo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (quoting *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996)). Under Nevada law, the standard for common-law battery by a police officer mirrors the federal civil rights law standard. *See Williams v. City of Sparks*, 112 F.4th 635, 646-47 (9th Cir. 2024); *Ramirez*, 925 F. Supp. at 691. That is, "liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances." *Ramirez*, 925 F. Supp. at 691.

For the reasons already discussed, a genuine dispute as to the reasonableness of the force used precludes a finding of summary judgment on the battery claim.

### 2. Negligence Claim

Afshar asserts a common law negligence claim against all Defendants, alleging that Officers McCauley, Butler, and Crawford breached their duty of care in their execution of the arrest tactics, that their actions were the direct and proximate cause of Afshar's injuries, and that their actions were "taken within the scope and course of their employment" with Defendant City of Reno. (ECF No. 1 at 9-10.) In their Motion, Defendants seek summary judgment on the negligence claim on the basis of, again, a reasonable and justifiable use of force, which they argue precludes Afshar from establishing the essential elements of the common law claim.[13] (ECF No. 25 at 12-13.) Based on its above analysis, the Court disagrees.[14]

---

[13]"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. 317, 317 (1986).

[14]In their reply, Defendants also raise a discretionary-act immunity argument for the first time. (ECF No. 30 at 8-10.) The Court declines to address this late-raised issue because Plaintiff never had an opportunity to address it. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) ("It is well established in this circuit that [t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (internal citations and quotations omitted).

11

Under Nevada law, to prevail on a claim for negligence, a plaintiff must establish four elements: "(1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009) (internal citation omitted). In Nevada, issues of proximate or legal cause, in particular, are considered issues of fact best suited for a jury to resolve. *See, e.g.*, *Nehls v. Leonard*, 630 P.2d 258, 260 (Nev. 1981) (internal citations omitted). Thus, generally, under Nevada law, negligence tends to require a fact-intensive assessment, and causation, specifically, is intertwined with factual inquiries, making summary judgment improper.

Defendants argue that they did not breach any duty of care because Afshar "physically impeded and delayed the officers," which they contend jeopardized public and officer safety and necessitated his arrest and the use of force. (ECF No. 25 at 12-13.) Defendants further argue that Afshar cannot prove causation because "indisputable video evidence" shows that Afshar's own resistance—and not the officers' actions—resulted in his injury. (*Id.* at 13.) In response, Plaintiff reasserts that, as discussed, there are material issues of fact as to the level of force used and, furthermore, as to whether the officers acted consistent with "typical and standard police practices" regarding de-escalation, principles of contact and cover, and command-and-control measures. (ECF No. 29 at 22 (citing (ECF No. 29-7)).) For the reasons already discussed, the Court agrees with Plaintiff and finds that, here, causation, in particular, is a question not ultimately fit for resolution by summary judgment. Accordingly, the Court denies summary judgment on the negligence claim.

## IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the Motion.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 25) is denied.

It is further ordered that claims for use of excessive force and battery against Officer Butler are dismissed.

It is further ordered that Defendants' motion to file supplemental authority (ECF No. 26) is granted.

It is further ordered that this case is referred to the Magistrate Judge to conduct a settlement conference. The deadline for filing of the proposed joint pretrial order is 30 days from the settlement conference, assuming settlement is not effectuated.

DATED THIS 26th Day of February 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE